| | | |
|---|---|---|
| KRISELDA JEAN SCRUGGS WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 3:13-cv-00785 JUDGE CRENSHAW |
| SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Kriselda Jean Scruggs Washington's Motion for Judgment on the Administrative Record (Doc. No. 16), to which Defendant Social Security Administration (SSA) has responded (Doc. No 21). Plaintiff filed a reply to the SSA's response. (Doc. No. 22.) Upon consideration of the parties' briefs and the transcript of the administrative record (Doc. No. 11),[1] and for the reasons set forth below, Plaintiff's Motion for Judgment will be **DENIED** and the decision of the SSA will be **AFFIRMED**.

## I. Introduction

Plaintiff filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act on August 12, 2009,[2] alleging disability onset as of August 12, 2009, due

---

[1] Referenced hereinafter by "Tr." followed by the page number found in bolded typeface at the bottom right corner of the page.

[2] The Act and implementing regulations regarding Disability Insurance Benefits (contained in Title II of the Act and 20 C.F.R. Part 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Part 416 of the regulations) are, substantially identical. Barnhart v. Thomas, 540 U.S. 20, 24 (2003) (noting that the Title II and the Title XVI definition of "disability" is "verbatim the same" and explaining that "[f]or simplicity sake, we will refer only to the II provisions, but our analysis applies equally to Title XVI.") The Court will cite to Title II statutes and regulations, unless otherwise indicated.

to severe depression, bipolar disorder and memory loss. (Tr. 135.) Her claim to benefits was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). ALJ Scott C. Shimer heard the case on September 1, 2011, when Plaintiff appeared with counsel and gave testimony. (Tr. 27-47.) Testimony was also received from an impartial vocational expert. (Id.) At the conclusion of the hearing, the matter was taken under advisement until November 21, 2011, when ALJ Shimer issued a written decision finding Plaintiff not disabled. (Tr. 10-23.) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since August 12, 2009, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative joint disease (left shoulder); bipolar disorder; and a history of polysubstance abuse, and osteoarthritis (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) which includes the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours out of 8 hours; and sit 6 hours out of 8 hours. The claimant is restricted to simple routine repetitive tasks. She can have occasional contact with the public. Workplace changes should be gradual and infrequent and she may require infrequent direct non-confrontational supervision. She is also restricted from work involving production rate, pace, and/or assembly line work.

5. The evidence establishes the claimant has no past relevant work (20 CFR 416.965).

6. The claimant, born on February 10, 1966, was 43 years old, which is defined as a younger individual age 18-49, on the date the application was protectively filed (20 CFR 416.963).

7. The claimant has a limited (11th grade) education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a "disability" as defined in the Social Security Act since August 12, 2009, the date the application was protectively filed (20 CFR 416.920(g)).

(Tr. 12-14, 18-19.)

On June 17, 2013, the Appeals Council denied Plaintiff's request for review of ALJ Shimer's decision (Tr. 1–6), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If ALJ Shimer's findings are supported by substantial evidence based on the record as a whole, then those findings are conclusive. Id.

## II.  Prior Claim and Finding

Prior to filing the application for SSI that is the subject of the instant case, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act and an application for SSI under Title XVI of the Social Security Act on September 27, 2006. In both applications Plaintiff alleged a disability onset date of June 1, 1992. Both applications were denied at the initial and reconsideration stages of state agency review. Thereafter, Plaintiff requested *de novo* review of her case by an ALJ. The prior ALJ, John R. Daughtry, heard the case on June 16, 2009. Plaintiff appeared and testified at the hearing, as did Kenneth Anchor, an impartial vocational expert.[3] At the conclusion of the hearing, the matter was taken under

---

[3] Mr. Anchor was also the impartial vocational expert who testified at the hearing held on the SSI application that is the subject of the instant action.

advisement until July 29, 2009, when ALJ Daughtry issued a written decision finding Plaintiff

not disabled.  (Tr. 51-63.)

In his written decision, ALJ Daughtry stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) which includes the ability to lift and/or carry 30 pounds occasionally and 15 pounds frequently; stand and/or walk up to 7 hours in an 8 hour workday; sit up to 6 hours in an 8 hour workday; can engage in unlimited pushing/pulling and can otherwise perform a full range of light work. The claimant can understand, remember, and carry out simple, low-level detailed directions; can maintain concentration and persistence necessary to perform simple and low-level detailed tasks with normal supervision; no production rate, pace, assembly line work; can have occasional contact with the general public; can interact with co-workers and supervisors; may require infrequent direct non-confrontational supervision; and can adapt to infrequent changes.

(Tr. 55.)

## IV. Review of the Record

Prior to reviewing Plaintiff's medical records, ALJ Shimer briefly set forth the limits of

his review, as follows:

> Under AR 98-4,[4] Drummond v. Commissioner of Social Security, 126 F.3d 837, [842-43 (6th Cir. 1997)], a prior administrative law judge['s] finding must be adopted on a subsequent disability claim barring additional evidence that would support a contrary finding.  The Sixth Circuit court stated that "evidence not considered in the earlier proceeding would be needed as an independent basis to sustain a finding contrary to the final earlier finding."

(Tr. 14.)

ALJ Shimer then summarized Plaintiff's medical records:

---

[4] "AR" stands for Acquiescence Ruling.  An Acquiescence Ruling is issued when the SSA "determine[s] that a United States Court of Appeals holding conflicts with [its] interpretation of a provision of the Social Security Act or regulations and the Government does not seek further judicial review or is unsuccessful on further review." 20 C.F.R. § 416.1485.

[T]he claimant returned to the Shade Tree Clinic on May 22, 2010, for follow up of right hip pain.[5] She has had two sessions of physical therapy, but was not sure if it was making a difference. She stated Motrin was not helping much and she wished she could get something stronger for pain. She was encouraged to continue physical therapy, as pain appears more muscular than true hip joint pain. She was not to be prescribed narcotic or anxiolytics because of multiple requests for such medications in the past. Exhibit 13F.

The claimant presented to the emergency room on July 19, 2010. She reported being involved in a motor vehicle accident on June 16, 2010, with no initial injury but over the last month, her right hip has been a little sore. She wanted Vicodin that "works" although she complained of mild pain. Physical examination was unremarkable except for mild right hip tenderness in the anterior aspect of the hip. She was neurovascularly intact with no motor or sensory deficits. Impression was sprained right hip. She was instructed to apply ice intermittently 15 to 20 minutes at a time four to six times daily. She was discharged home with a prescription for Tramadol. Exhibit 16F.

The claimant complained to a medical provider at Medical Necessities on October 27, 2010, of chronic pain in her right hip, right shoulder, legs, and lower back. Neurontin was prescribed. X- rays of right and left hip were normal. Cervical spine imaging studies revealed mild degenerative narrowing of the C5-6 disc space with no alignment abnormality. Lumbar spine imaging was normal. Impression was lower back pain - degenerative joint disease, cervical spine - degenerative disc disease, right shoulder - osteoarthritis, and muscle spasms. On November 24, 2010, she stated she was born with bone abnormality and has history of degenerative joint disease. She reported pain worse with prolonged sitting, standing, and lifting associated with numbness and tingling in upper extremities. She stated her medication was not working and Lortab and Soma were given. Examination on December 2, 2010, noted tenderness to palpation in the cervical and lumbar spine with slight decrease in range of motion. There was also tenderness to palpation of the right and left quadriceps and hamstrings and right shoulder with full range of motion. Straight leg raise was negative. She was encouraged to continue Lortab, Soma, and Xanax. On February 12, 2011, she complained of pain in her lower back, neck, and left shoulder. Laboratory testing results showed a positive ANA. Systemic erythematosus lupus was diagnosed with referral to rheumatologist. Lodine was prescribed. Exhibit 12F.

On August 14, 2010, she returned to the Shade Tree Clinic with right hip pain. She stated the pain does not radiate and is not associated with focal weakness, numbness, or paresthesia. She stated physical therapy was not making a difference. She reported having headaches for one and one-half years. She has

---

[5] Plaintiff was previously treated at the Shade Tree Clinic from November 22, 2008 to April 25, 2009. (Tr. 57.)

not really been concerned with them until she saw a commercial on television for Fixodent denture adhesive that described headaches similar to hers. Headaches occur three to four times a week and have not changed in intensity over one and one-half years. Examination revealed pain on flexion and extension of the right hip with tenderness to palpation over greater trochanter and IT tract. She was again encouraged to continue physical therapy and instructed to continue Ranitidine and Ibuprofen. Laboratory testing was reviewed on May 28, 2011. The results are not entirely conclusive/indicative of lupus. She is to be seen in the arthritis clinic on June 21, 2011. She stated she was given the diagnosis of lupus two months ago at an outside clinic. She reported aching in her joints and itching throughout her body. She denied skin changes, rash on face, lymphadenopathy, pleuritic chest pain, palpitations, hematuria, and cold extremities. Laboratory testing was ordered to establish baseline. She was given a referral to rheumatology.[6] Exhibit 13F.

Dr. Nick Sowell performed a consultative physical examination for the Social Security Administration on November 19, 2009. The claimant was 67.5 inches tall and 164 pounds. Blood pressure was 115/67. She reported diagnosis three to five years ago of degenerative joint disease of the shoulders and history of multiple motor vehicle accidents and drug and alcohol addiction. She complained of pain in her shoulders, hips, legs, feet, ankles, and back with stiffness. She had no difficulty arising from her chair or getting onto and off the examination table. Gait, station, and mobility were normal. There was full range of motion in all joints. No physical functional assessment was performed. Exhibit 2F.

Non-examining State Agency medical consultant, James P. Gregory, M.D., reviewed the evidence and completed a physical residual functional capacity assessment on January 24, 2010. He assessed the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours out of 8 hours; and sit 6 hours out of 8 hours. Exhibit 7F. Non-examining State

---

[6] Plaintiff alleged a diagnosis of lupus. However, ALJ Shimer noted that "the claimant's testimony was that she has no official diagnosis yet, but they are doing some additional testing. Exhibit 12F. However, it is clear that lupus has been ruled out as a diagnosis. On June 21, 2011, the claimant was seen by rheumatology at Vanderbilt Shade Tree Clinic regarding the possibility of lupus. Exhibit 17F. Her previous positive ANA was noted to have possibly sparked concern for an autoimmune disorder. However, it was further noted that her most recent ESR was zero suggesting no ongoing inflammatory process. She also had no history of rash, renal disease, oral ulcerations, and there were no hematologic abnormalities and very little else to suggest lupus. Her rheumatoid factor was negative reducing suspicion for rheumatoid arthritis. Her history was noted to fit neither diagnosis. It was determined that the claimant did not have lupus and the origin of her arthralgias was not rheumatologic. Over the counter Ibuprofen was recommended for suspected osteoarthritis." (Tr. 13.)

Agency medical consultant, Frank R. Pennington, M.D., reviewed the evidence on May 18, 2010, and concurred with the assessment of Dr. Gregory. Exhibit l0F. The opinions of Dr. Gregory and Dr. Pennington are well supported by the evidence and entitled to significant weight in this decision.

The claimant returned to Mental Health Cooperative on June 17, 2009.[7] She denied auditory and visual hallucinations, suicidal and homicidal ideation, and side effects to medications. Sleep and appetite improved and mood was stable. She was calm and cooperative with good eye contact. She was instructed to continue Depakote and Lithium. Lithium was changed to Seroquel on July 15, 2009, with improvement. A clinically related group (CRG) form was completed on September 24, 2009, reflecting moderate limitation in activities of daily living, interpersonal functioning, and adaptation to change and marked limitation in concentration, task performance, and pace with global assessment of functioning (GAF) score of 45. It is noted that she does not concentrate well when off medications. She complained of increased depression on October 2, 2009, due to being without medications for one month. Medications were restarted with good results noted on October 16, 2009. She reported doing well on November 23, 2009. On January 11, 2010, she reported taking medications as prescribed with no side effects. Exhibit 8F.

On February 17, 2010, she stated that she was not currently interested in therapy. She reported doing okay on March 22, 2010, and walking daily was helpful. Mood has stabilized and she has been practicing coping skills. Depakote dosage was increased on April 19, 2010, due to increase in depression, poor sleep, and decreased appetite. A clinically related group (CRG) form was completed on August 26, 2010, reflecting moderate limitation in activities of daily living and marked limitation in interpersonal functioning, concentration, task performance, and pace, and adaptation to change with global assessment of functioning (GAF) score of 50. On December 1, 2010, she requested to resume individual therapy as she found it helpful. Although she has been clean for four years, she continues to attend Narcotics Anonymous. Depakote and Seroquel were held and she was given a trial of Tegretol, Zyprexa, and Cogentin. She stopped medications after second dose due to side effects. Medications were again adjusted and she was doing much better on January 5, 2011. On March 10, 2011, she stated medications were helpful for mood stabilization but not for sleep. She denied any physical health problems. She was to continue Prozac and Vistaril and start Seroquel. She stated she was doing well on May 23, 2011. On July 7, 2011, she reported increased mood swings, depression, and anxiety related to interpersonal stressors at home. Prozac dosage was increased. She reported mood was stable on August 4, 2011. No side effects of medications were reported. Exhibits 8F and 15F.

_____

[7] Plaintiff was previously treated at the Mental Health Cooperative from September 18, 2006 through April 21, 2009 (Tr. 57.)

Robert N. Doran, M.A., conducted a consultative psychological evaluation for the Social Security Administration on December 11, 2009. The claimant reported depression, bipolar disorder, memory loss, poor sleep, decreased appetite, and history of alcohol and drug abuse. She stopped drinking and using drugs three and one-half years ago. She has a current driver's license and drives two to three times per week. She lives by herself. She was alert and oriented and did not appear distressed. She was suggestible and endorsed a large number of symptoms; however, her description of symptoms was vague. Statements were outlandish for example: her friend must show her every day how to perform hygiene tasks. No diagnosis was made and no assessment of mental functioning was completed. Exhibit 3F.

Edward L. Sachs, Ph.D., a non-examining State Agency medical consultant, reviewed the evidence and completed a psychiatric review technique form (PRTF) and mental residual functional capacity assessment on January 6, 2010. He concluded the claimant had a moderate restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of extended decompensation in a work or work-like setting. More specifically, he concluded the claimant could perform one, two, or three step tasks over full work week; interact infrequently or one to one with public and meet basic social demands in a work setting; and adapt to gradual or infrequent changes. Exhibits 4F and 5F. Brad V. Williams, M.D., a non-examining State Agency medical consultant, reviewed the evidence on April 29, 2010, and concurred with the opinion of Dr. Sachs. Exhibit 9F.

Carrie Brensike, APN, completed a medical source statement on June 2, 2011. She assessed moderate limitation (limited but still able to function satisfactorily) in the ability to understand, remember, and carry out complex instructions and marked limitation (substantial loss in the ability to effectively function) in the ability to make judgments on complex work-related decisions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. Exhibit 14F.

The claimant testified at the hearing, she is divorced and lives with her friend. She has degenerative arthritis that affects all of her joints. She takes Motrin, Lortab, and Soma. She experiences depression, mood swings, anxiety attacks, racing thoughts, and thoughts of self-harm. She sees and hears things but nothing is there. She has three bad days out of seven. Sometimes, she does not want to get out of her bed. She has a history of drugs and alcohol. She received help and has not used in five years. She is able to sit for 30 minutes, stand for 30 to 45 minutes, and maybe walk one block.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The evidence does not substantiate a basis for an intensity, severity, and frequency of a level of pain that would significantly interfere with work-related activities. Medications were helpful in controlling/improving her pain. Mentally, she does well when she takes her medications as prescribed. She is able to ambulate independently and communicate effectively with health providers. The record does not show any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 months. As noted above, lupus, and rheumatoid arthritis have been ruled out with regard to the claimant. Only over-the-counter Ibuprofen was recommended to treat the claimant's reported arthralgias. The rheumatology department at the Vanderbilt Shade Tree Clinic did not limit the claimant's activities in any way. The record does not indicate any deterioration in the claimant's functioning since the previous ALJ decision, other than the added diagnosis of osteoarthritis. The evidence does not support the claimant's allegations of disability.

The claimant's residual functional capacity is well supported by the weight of the evidence and objective medical findings and has adequately accommodated her impairments. Based on a thorough review of the evidence, there is not sufficient new evidence to "sustain a finding contrary to the final earlier finding." Therefore, the claimant retains the residual functional capacity outlined above.

(Tr. 15–18.)

## IV. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing]

9

into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

### B. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611,

615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity (RFC) at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ Shimer erred by failing to evaluate the opinion of Plaintiff's treating mental health provider as required by statute, case law, and applicable rulings. Specifically, Plaintiff contends that ALJ Shimer was obliged to, but did not, evaluate the opinion of Plaintiff's treating psychiatric nurse practitioner ("NP") Carrie Brensike in compliance with the requirements of SSR 06-3p and did not set forth his rationale for rejecting NP Brensike's opinion.[8]

---

[8] While Plaintiff contends that NP Brensike was her "treating psychiatric nurse practitioner," the records from the Mental Health Cooperative make clear that NP Brensike was one of many nurse practitioners and other mental health professionals who treated Plaintiff. (Tr. 253-447, 502-547).

Nurse-practitioners are not "acceptable medical sources," 20 C.F.R. § 404.1513(a),[9] but are categorized as "other sources." [10]  When "acceptable medical sources" issue opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value, which includes consideration of: the nature and extent of the treatment relationship and frequency of examination; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.  20 C.F.R. § 404.1527(c).  Opinions from "acceptable medical sources" can be used to: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion may be entitled to controlling weight.  SSR 06–3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

The regulations do not explicitly address how the SSA must evaluate the opinions of "other sources," however, SSR 06–3p states that they can be evaluated under the same factors applicable to opinions from "acceptable medical sources." SSR 06–3p, 2006 WL 2329939, at *4.  Opinions from "other sources" can be used to show the severity of the claimant's impairment(s) and how it affects the claimant's ability to work.  20 C.F.R §404.1513(d).  However, the opinions of "other sources" cannot establish the existence of a medically determinable impairment.  SSR 06-03P, 2006 WL 2329939, at *2.

---

[9] Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists.  20 C.F.R. § 404.1513(a).

[10] "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence.  20 C.F.R. § 404.1513(d).

SSR 06-03p does not require ALJs to give explicit attention in their decisions to every shred of opinion evidence, as explained below:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision. . . .

SSR 06-03p, 2006 WL 2329939, at *6. Thus, the ALJ *must* explain his or her weighing of evidence from "other sources" in cases where such evidence is held to outweigh a treating source's medical opinion, as evidence of the claimant's ability to perform work. Otherwise, the ALJ should make explicit his consideration of "other source" evidence; if not the actual weight such evidence is given, where that evidence could potentially sway the ultimate determination of the claimant's case toward a finding of disability. This is not a demanding standard. Morris v. Comm'r of Soc. Sec., No. 1:11-cv-154, 2012 WL 4953118, at *10-11 (W.D. Mich. Oct. 17, 2012).

Although Plaintiff claims that ALJ Shimer rejected Nurse Practitioner ("NP") Brensike's assessment of Plaintiff's mental impairments, Plaintiff does not point to anything in the ALJ's decision to support this claim. While ALJ Shimer did not expressly state the weight given to NP Brensike's opinion, nowhere in his decision does he state that he rejected it wholesale. Additionally, as a matter of law, NP Brensike's opinion was not entitled to controlling weight. See e.g., Starr v. Comm'r of Soc. Sec., No. 2:12-cv-290, 2013 WL 653280, at *5 (S.D. Ohio Feb. 21, 2013) (finding that "[t]he opinions of nurse practitioners, even treating nurse practitioners, are . . . not entitled to the controlling weight or deference to which the opinions of treating

physicians are ordinarily entitled"); Hatfield v. Astrue, No. 3:07-cv-242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (finding that nurse practitioner's opinion was not entitled to controlling weight as a "treating source," but "[r]ather, as an "other source," the ALJ was merely required to consider her opinion . . .".) Thus, ALJ Shimer could consider NP Brensike's opinion without adopting it as his own, which is what he clearly did.

As he was required to do, ALJ Shimer thoroughly considered NP Brensike's opinion, along with all the other mental health evidence in the record. In describing how he reached his RFC determination, ALJ Shimer noted that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . in accordance with the requirements of . . . [SSR] 06–3p." (Tr. 14.) ALJ Shimer then briefly summarized the salient information from Plaintiff's records from the Mental Health Cooperative; a consultative psychological evaluation prepared by Robert N. Doran, M.A.; a psychiatric review technique form (PRTF) and mental RFC assessment prepared by Edward L. Sachs, Ph.D.; the opinion of Brad V. Williams, M.D. a non-examining state agency medical consultant; and NP Brensike's medical source statement. (Tr. 15-18.)

Among other things, ALJ Shimer noted that Plaintiff reported that she was doing well after her medications were adjusted on January 5, 2011 through July 7, 2011, when she reported increased mood swings, depression and anxiety related to interpersonal stressors at home. (Tr. 16-17.) Plaintiff's medications were adjusted and on August 4, 2011, the last visit for which Plaintiff provided records, she reported that her mood was stable and she did not experience any side effects from her medication. (Tr. 17.)

ALJ Shimer noted that Mr. Doran found Plaintiff to be "suggestible and endorsed a large number of symptoms; however, her description of symptoms was vague." (Tr. 17.)

Additionally, Plaintiff made outlandish statements. (Id.) ALJ Shimer noted that Mr. Doran did not make a diagnosis nor did he complete an assessment of mental functioning. (Tr. 17.)

ALJ Shimer noted that in his January 6, 2010, PRTF and Mental RFC Assessment, Dr. Sachs found that Plaintiff has "a moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace and no repeated episodes of extended decompensation in a work or work-like setting." (Tr. 17.) ALJ Shimer also noted that Dr. Sachs found that Plaintiff "could perform one, two, or three step tasks over full workweek; interact infrequently or one to one with public and meet basic social demands in a work setting; and adapt to gradual or infrequent changes." (Id.)

ALJ Shimer noted that after conducting a records review and considering Dr. Sachs assessment, on April 29, 2010, Dr. Williams affirmed Dr. Sachs assessment. (Id.)

Finally, ALJ Shimer noted that NP Brensike found that Plaintiff had "moderate limitation (limited but still able to function satisfactorily) in the ability to understand, remember, and carry out complex instructions and marked limitation (substantial loss in the ability to effectively function) in the ability to make judgments on complex work-related decisions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting." (Tr. 17.) NP Brensike's findings derived from the medical source statement which was a form on which NP Brensike checked boxes indicating Plaintiff's level of impairment. In support of her findings, NP Brensike stated generally "please see medical records;" notably Plaintiff's records from the Mental Health Cooperative comprise more than 200 pages of progress notes. The form is devoid of any discussion of the observations or medical evidence that led NP Brensike to her conclusion; it

does not indicate how long and how frequently NP Brensike had been treating Plaintiff; and it appears to be based, in large part, on Plaintiff's subjective description of her impairments.

Given that ALJ Shimer carefully detailed NP Brensike's opinion in his summary of the medical evidence, it is clear that he considered it when calculating Plaintiff's RFC, but simply found it less persuasive than the contrary evidence in the record. See Hall v. Astrue, No. 1:09-cv-2514, 2010 WL 5621291, at *9 (N.D. Ohio Dec. 23, 2010), report and recommendation adopted sub nom. Hall v. Comm'r of Soc. Sec., No. 09-cv-2514, 2011 WL 194615 (N.D. Ohio Jan. 20, 2011) (finding that "[a]lthough the ALJ did not specifically state the weight he accorded to the non-medical sources' opinions, the ALJ's discussion of all of the evidence on the record . . . makes clear to a subsequent reviewer his reasoning for not fully incorporating the findings contained in [those opinions] into his RFC determination—lack of consistency."); Hill v. Astrue, No. 5:12-cv-00072-R, 2013 WL 3293657, at *4 (W.D. Ky. June 28, 2013), aff'd sub nom. Hill v. Comm'r of Soc. Sec., 560 F. App'x 547 (6th Cir. 2014) (finding that where Plaintiff's treating psychotherapist was not an "acceptable medical source" but an "other source," and the ALJ discussed his opinion "in considerable detail," the ALJ's decision "reflects an adequate consideration" of the treating psychotherapist's opinion.) As such, ALJ Shimer sufficiently complied with the requirements of SSR 06-3p in evaluating NP Brensike's opinion.

Plaintiff next contends that ALJ Shimer erred in finding that there had not been a significant change in Plaintiff's overall medical condition since ALJ Daughtry's decision. Specifically, Plaintiff alleges that ALJ Shimer was not required to defer to ALJ Daughtry's RFC finding because ALJ Shimer found that Plaintiff's osteoarthritis was a severe impairment which Plaintiff did not have at the time of ALJ Daughtry's decision.

As noted above, ALJ Daughtry found that Plaintiff had:

the residual functional capacity to lift and/or carry 30 pounds occasionally and 15 pounds frequently; stand and/or walk up to 7 hours in an 8 hour workday; sit up to 6 hours in an 8 hour workday; can engage in unlimited pushing/pulling and can otherwise perform a full range of light work. The claimant can understand, remember, and carry out simple, low-level detailed directions; can maintain concentration and persistence necessary to perform simple and low-level detailed tasks with normal supervision; no production rate, pace, assembly line work; can have occasional contact with the general public; can interact with co-workers and supervisors; may require infrequent direct non-confrontational supervision; and can adapt to infrequent changes.

(Tr. 55.) ALJ Shimer found that Plaintiff had:

the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) which includes the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours out of 8 hours; and sit 6 hours out of 8 hours. The claimant is restricted to simple routine repetitive tasks. She can have occasional contact with the public. Workplace changes should be gradual and infrequent and she may require infrequent direct non-confrontational supervision. She is also restricted from work involving production rate, pace, and/or assembly line work.

(Tr. 14.)

In the Sixth Circuit, a prior decision by the SSA precludes relitigation of the same issues in subsequent cases, absent evidence of changed circumstances.

When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998) (acquiescing to Drummond v. Commissioner, 126 F.3d 837 (6th Cir. 1997)). Thus, "where an ALJ is presented with a new claim for disability following a prior denial, the ALJ must consider whether the claimant has presented 'new and material' evidence that his or her health has declined since the prior decision." Green v. Comm'r of Soc. Sec., No. 16-10093, 2016 WL 7972149, at *7 (E.D. Mich.

Dec. 21, 2016), report and recommendation adopted sub nom. Green v. Colvin, No. 16-10093, 2017 WL 282175 (E.D. Mich. Jan. 23, 2017). "If the claimant fails to provide such evidence, the ALJ should conclude that the prior decision continues to have preclusive effect over the unadjudicated period, and thus end the decision." Id.

Plaintiff complains that ALJ Shimer's decision was inconsistent because he stated that "the objective medical evidence shows that there has not been a significant change in the claimant's overall medical condition," (Tr. 10), but then noted that Plaintiff's osteoarthritis was a new, severe impairment that was not considered in ALJ Daughtry's decision (Tr. 12). Even if ALJ Shimer erred in taking these seemingly contradictory positions, any such error was harmless. Where an ALJ in a subsequent decision renders an RFC finding that is more restrictive than the ALJ in a prior decision, the claimant has no cause for remand even if the subsequent ALJ failed to properly apply the preclusive effect of the earlier decision, because any error works to the claimant's benefit. See Clayton v. Comm'r of Soc. Sec., 2:15-cv-12249, 2016 WL 5402963, at *3 (E.D. Mich. Sept. 28, 2016) (finding that "where a latter [RFC] is more restrictive than the prior RFC, a Plaintiff is unable to demonstrate the prejudice or harm necessary to achieve a remand"); Siegrist v. Comm'r of Soc. Sec., No. 14-14436, 2016 WL 859866, at *10 (E.D. Mich. Feb. 17, 2016), report and recommendation adopted sub nom. Siegrist v. Colvin, No. 14-CV-14436, 2016 WL 852799 (E.D. Mich. Mar. 4, 2016) (finding that where "the language describing the other limitations in the two RFC's is not identical" but " both sets of restrictions track closely and are substantively the same," and where the RFC in the current decision appears to be more restrictive than in the prior decision, "the plaintiff has not shown any harm in the ALJ's deviation from the previous RFC finding"). ALJ Shimer's RFC finding varied only slightly from ALJ Daughtry's RFC finding, and the variance worked in

Plaintiff's favor. For example, ALJ Shimer reduced the amount of weight that Plaintiff was expected to carry and reduced the number of hours Plaintiff was expected to stand or walk. (Tr. 14.) Thus, to the extent that ALJ Shimer erred by slightly modifying ALJ Daughtry's RFC, Plaintiff suffered no harm because the modifications worked to her benefit.

Moreover, substantial evidence supported ALJ Shimer's finding that Plaintiff retained an RFC virtually identical to ALJ Daughtry's prior RFC finding. ALJ Shimer reviewed Plaintiff's treatment records from the time period not previously considered by ALJ Daughtry. As set forth in detail above, ALJ Shimer carefully considered all of the evidence regarding Plaintiff's mental and physical health. (Tr. 15-17.) Based on his analysis of the evidence, ALJ Shimer found that "[t]he claimant's [RFC] is well supported by the weight of the evidence and objective medical findings and has adequately accommodated her impairments" (Tr. 18.) Substantial evidence supported this finding.

Finally, Plaintiff claims that ALJ Shimer failed to properly evaluate and assess her credibility as required by SSR 96-7p. Specifically, Plaintiff argues that ALJ Shimer failed to sufficiently examine the objective evidence that supported Plaintiff's subjective complaints.

Although the ALJ, not the court system, is tasked with evaluating a witness' credibility, credibility findings must be "grounded in the evidence and articulated in the determination or decision." SSR 96-7P, 1996 WL 374186 at *4 (July 2, 1996); Rogers v. Commissioner, 486 F.3d 234, 247 (6th Cir. 2007). In addition to the objective evidence, the ALJ should consider the following factors when assessing the credibility of a claimant's statements regarding her symptoms:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186 at * 3. Under SSR 96–7p the ALJ is required to "consider" the seven-listed factors, but there is no requirement that the ALJ discuss every factor. <u>See White v. Commissioner</u>, 572 F.3d 272, 287 (6th Cir. 2009); <u>see also</u> <u>Coleman v. Astrue</u>, No. 2:09–cv–36, 2010 WL 4094299, at * 15 (M.D. Tenn. Oct.18, 2010) (finding that "[t]here is no requirement [ ] that the ALJ expressly discuss each listed factor."); <u>Roberts v. Astrue</u>, No. 1:09–cv–1518, 2010 WL 2342492, at * 11 (N.D. Ohio June 9, 2010) (finding that "the ALJ need not analyze all seven factors contained in SSR 96–7p to comply with the regulations").

Credibility determinations concerning a claimant's subjective complaints are within the province of the ALJ. <u>See</u> <u>Gooch v. Secretary of Health & Human Servs.</u>, 833 F.2d 589, 592 (6th Cir.1987). The Court does not make its own credibility determinations. <u>See Walters v. Commissioner</u>, 127 F.3d 525, 528 (6th Cir. 1997). The Court's "review of a decision of the

Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." <u>Kuhn v. Commissioner</u>, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." <u>Ulman</u>, 693 F.3d at 714; <u>see</u> <u>Warner</u>, 375 F.3d at 392 (noting that credibility findings made by the ALJ are given great deference.). "Claimants challenging the ALJ's credibility determination face an uphill battle." <u>Daniels v. Commissioner</u>, 152 F. App'x 485, 488 (6th Cir. 2005); <u>see</u> <u>Ritchie v. Commissioner</u>, 540 F. App'x 508, 511 (6th Cir. 2013) (recognizing that "[w]e have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'") "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] d[oes] not, of observing a witness's demeanor while testifying." <u>Jones</u>, 336 F.3d 469, 476 (6th Cir. 2003). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." <u>Buxton</u>, 246 F.3d at 773; <u>accord</u> <u>White</u>, 572 F.3d at 287.

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." <u>Rogers</u>, 486 F.3d at 248. The <u>Rogers</u> court observed that Social Security Ruling 96–7p requires that the ALJ explain his or her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." <u>Rogers</u>, 486 F.3d at 248.

ALJ Shimer's discussion of Plaintiff's credibility began with the relevant regulations and social security rulings, including SSR 96–7p. (Tr. 14.) ALJ Shimer's reference to SSR 96–7p

"indicates that he 'considered' all the ruling's factors."  Brown v. Commissioner, No. 1:10–cv–705, 2012 WL 951556, at * 5 (W.D. Mich. Feb 27, 2012).  ALJ Shimer observed that the medical evidence supported his finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 17.)  Nevertheless, he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." (Tr. 18.)  ALJ Shimer then set forth the evidence that led him to this finding:

> Medications were helpful in controlling/improving her pain.  Mentally, she does well when she takes her medications as prescribed.  She is able to ambulate independently and communicate effectively with health providers.  The record does not show any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 months.  As noted above, lupus, and rheumatoid arthritis have been ruled out with regard to the claimant.  Only over-the-counter Ibuprofen was recommended to treat the claimant's reported arthralgias.  The rheumatology department at the Vanderbilt Shade Tree Clinic did not limit the claimant's activities in any way.  The record does not indicate any deterioration in the claimant's functioning since the previous ALJ decision, other than the added diagnosis of osteoatihritis.  The evidence does not support the claimant's allegations of disability.

ALJ Shimer sufficiently complied with the requirements of SSR 96-7p when he explained his factual finding regarding Plaintiff's credibility.

In sum, Plaintiff's claims of error have no merit, and the decision of the ALJ is supported by substantial evidence on the record as a whole.  Accordingly, ALJ Shimer's decision will be affirmed.

## V. Conclusion

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record will be **DENIED** and the decision of the SSA will be **AFFIRMED**.

An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE